UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------- x
                                  :
RAIZY FELBERBAUM,                 :
                                  :
                    Plaintiff,    :
                                  :   **MEMORANDUM AND ORDER**
     -against-                    :
                                  :   No. 19-cv-4249 (KAM)(VMS)
MANDARICH LAW GROUP, LLP,         :
                                  :
                    Defendant.    x
                                  
---------------------------------

**MATSUMOTO, United States District Judge:**

        Plaintiff Raizy Felberbaum brought this putative class action on behalf of herself and persons similarly situated, alleging violations of certain provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by Defendant Mandarich Law Group, LLP ("Mandarich").[1]  Plaintiff and Defendant have cross-moved for summary judgment.  For the reasons set forth below, Defendant's motion for summary judgment is granted in its entirety and Plaintiff's motion is denied.

---

[1]     Plaintiff filed this lawsuit as a class action, but no motion for Rule 23 class certification has yet been made by Plaintiff as of the date of this Memorandum and Order.

1

## BACKGROUND

The Court has taken the facts set forth below from the parties' declarations, affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of facts.[2]   Upon consideration of the motions for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  Unless otherwise noted, the following facts are undisputed, or the opposing party has pointed to no evidence in the record to contradict them.

### I.   Factual Background

Plaintiff is an individual who is a citizen of the State of New York residing in Kings County, New York.  (Def. Resp. at 1.)  Defendant Mandarich is a limited liability partnership engaged in the practice of law that regularly collects or attempts to collect debts.  (*Id.* at 1-2.)

On March 13, 2019, Mandarich sent an initial collection letter (the "Collection Letter") to Plaintiff, attempting to collect a debt in the amount of $7,329.85 that Plaintiff had

---

[2]   (*See* ECF Nos. 30-2, Defendant's 56.1 Statement ("Def. 56.1") and exhibits attached thereto; 32, Plaintiff's Response to Defendant's 56.1 Statement ("Pl. Resp."); 26-7, Plaintiff's 56.1 Statement ("Pl. 56.1"); 27, Defendant's Response to Plaintiff's Motion for a Pre-Motion Conference, with Defendant's Response to Plaintiff's 56.1 Statement attached thereto ("Def. Resp."); 26-1, Declaration of Jonathan M. Cader in Support of Plaintiff's Motion for Summary Judgment ("Cader Decl.") and exhibits attached thereto; 26-6, Declaration of Plaintiff Raizy Felberbaum in Support of Plaintiff's Motion for Summary Judgment ("Raizy Decl.").)

incurred on her Citibank, N.A. ("Original Creditor") credit card
account ("Felberbaum Account") and had not paid. (Def. Resp. at
2–3; Pl. Resp. at 2–3, 6.) Mandarich had been hired by Cavalry
SPV I, LLC ("Cavalry") to recover the amount owed on the Felberbaum
Account, which Cavalry had purchased from Citibank, N.A. (Pl.
Resp. at 3–4.) Cavalry had sent Mandarich the following documents
related to the Felberbaum Account: (1) the Affidavit of Sale of
Account by the Original Creditor; (2) the Bill of Sale and
Assignment by the Original Creditor to Cavalry; (3) a redacted
exhibit to the Bill of Sale and Assignment; and (4) statements for
the Felberbaum Account rendered by the Original Creditor to
Plaintiff ("Account Statements"). (Pl. Resp. at 4–6.)[3]

---

[3]    Plaintiff objects to the statements made in paragraphs 11, 12, and 13 in
Defendant's 56.1 Statement, which describe the documents that were transmitted
by Cavalry to Mandarich, arguing that they are "not supported by citation to
admissible evidence. More specifically, the referenced documents have not been
authenticated by the entity who generated them and/or any other party to the
transactions and Defendant, as counsel, cannot authenticate same." (Pl. Resp.
at 4–6.)
      The "referenced documents" subject to Plaintiff's objection have been
submitted as exhibits to the Affidavit of Claire Whitlatch, a partner at
Mandarich. (*See* Exhibit B to Def. 56.1 ("Whitlatch Aff."); Group Exhibit B-1,
Affidavit of Sale of Account by Original Creditor, Bill of Sale and Assignment
by the Original Creditor to Cavalry, and the redacted exhibit to the Bill of
Sale and Assignment; and Group Exhibit B-2, Account Statements.) Though these
are business records created by entities other than Mandarich, it is well-
settled that a custodian need not have personal knowledge of the actual creation
of a document to attest to its contents. *See Phoenix Assocs. III v. Stone*, 60
F.3d 95, 101 (2d Cir. 1995) (stating that "[t]he custodian need not have personal
knowledge of the actual creation of the document" to lay a proper foundation.
(internal citation and quotation marks omitted)); *see also Thomas v. Midland
Credit Mgmt., Inc.*, No. 17-cv-523(ADS), 2017 WL 5714722, at *9 (E.D.N.Y. Nov.
27, 2017) (concluding that an individual who "accesses and routinely reviews"
business records, including account-level debt files, from different entities
was a "custodian of those records" and therefore "laid a proper foundation for
the business records").
      Whitlatch attests that she was employed as an attorney at Mandarich "[a]t
all relevant times" described in the Complaint, and is "aware of the policies
and procedures that were in place as well as the firm's general practice,

3

Prior to the Collection Letter being sent to Plaintiff,
a Mandarich attorney, Matthew S. Salyer, reviewed all the documents
in Plaintiff's file, including the Affidavit of Sale of Account by
Original Creditor, the Bill of Sale and Assignment by the Original
Creditor to Cavalry and the redacted exhibit attached thereto, and
various Account Statements ranging from 2014 to 2018, when the
Felberbaum Account was ultimately charged off. (Pl. Resp. at 10–
13.)[4] The redacted exhibit to the Bill of Sale and Assignment

procedures and operations in the area of creditors' rights during [those
times]." (Whitlatch Aff. ¶¶ 3, 14.) Additionally, Whitlatch attests that in
her current capacity as a partner at Mandarich, she is familiar with
documentation and evidence of debt owed to creditor clients of the firm,
"including those involving Citibank, N.A. and Cavalry" and that "Mandarich has
integrated [such documentation] into its records and routinely relies on them
in its representation of Cavalry . . . ." (Id. ¶¶ 5, 8–12.) Therefore, the
Court concludes that because Whitlatch would be able to lay a proper foundation
for Group Exhibits B-1 and B-2, they would be admissible at trial. And because
Group Exhibits B-1 and B-2 are the same documents as Group Exhibits A-3 and A-
4, respectively, the Court finds that Group Exhibits A-3 and A-4 are also
admissible.
    The Court is likewise unpersuaded by Plaintiff's remaining arguments that
statements in paragraphs 11, 12, and 13 are not "short and concise" and are not
"material." (Pl. Resp. at 4–6.) Indeed, paragraphs 11, 12, and 13 do no more
than set forth the documents that were transmitted by Cavalry to Mandarich, and
the question of what documents were contained in Plaintiff's file and, in turn,
reviewed by Mandarich's attorney goes to the issue of whether there was
meaningful attorney involvement in the collection of Plaintiff's debt.
[4]    Plaintiff objects to the statements made in paragraphs 25, 28, 29, 30,
and 31 of Defendant's 56.1 Statement (mislabeled as paragraphs 26, 29, 30, 31,
and 32 in Plaintiff's Response to Defendant's 56.1 Statement), which describe
Salyer's meaningful involvement in the collection of Plaintiff's debt through
his review of the documents contained in Plaintiff's file, arguing that Salyer
"did not keep track of the amount of time he purportedly spent reviewing this
case and has no independent recollection of the same," and Mandarich's "'History
Report' shows that Salyer performed only two (2) of the thirty-nine (39) tasks
associated with Plaintiff's file and that both tasks were completed within one
minute." (Pl. Resp. at 10–13.) For the reasons set forth infra, the Court
finds that Plaintiff has failed to demonstrate the existence of a genuine
dispute regarding the fact that Salyer's review of Plaintiff's file constituted
meaningful attorney involvement. As for Plaintiff's objection that "the
'History Report' does not provide any indication as to what documents, if any,
Salyer purportedly reviewed before allegedly requesting the letter," the fact
that the Debtor History Report does not refer to the specific documents reviewed

4

contained details of the Felberbaum Account, including: (1) Plaintiff's full name; (2) Plaintiff's address; (3) Plaintiff's social security number; (4) the date the Felberbaum Account was opened; (5) the last payment date; (6) the Original Creditor; (7) and the sale amount (i.e., the balance on the date of Cavalry's purchase of the Felberbaum Account). (*Id.* at 5.) The Account Statements showed purchases, returns, charges, and interest accumulation, and the account information in the Account Statements matched the account information contained in the redacted exhibit to the Bill of Sale and Assignment. (*Id.* at 12–13.)

The Collection Letter, which forms the basis for Plaintiff's claims, is printed on a letterhead with the heading "Mandarich Law Group, LLP, Attorneys at Law," and provides details about Plaintiff's alleged outstanding debt, including the current creditor (Cavalry), current balance ($7,329.85), the date of last payment (11/26/2014), and account number. (Exhibit A-1 to Def. 56.1, the Collection Letter ("Collection Ltr.").) The body of the letter states, in relevant part, as follows:

> Your account has been sold and assigned to our client, Cavalry SPV I, LLC. This office has been hired to collect the above balance that you owe our client. This is a demand for payment of your outstanding obligation.

---

by Salyer does not suffice as evidence to dispute his statement that he reviewed those documents.

> Please contact Collection Supervisor, John Licata, of our office should you wish to discuss payment arrangements on your account. You can reach us on our toll-free number of 833.769.2757. When contacting our office by phone or letter, please refer to file number 4176484.
>
> Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by us. Upon your written request within the thirty-day period we will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)  The third paragraph is a notice required by the FDCPA to be included in debt collection letters (the "validation notice"). *See* 15 U.S.C. § 1692g.

Below the above items, the Collection Letter has four sentences in bold font:

> **NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION**
>
> **THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**
>
> **ALL CALLS TO AND FROM MANDARICH LAW GROUP, LLP MAY BE MONITORED AND/OR RECORDED FOR COMPLIANCE PURPOSES.**
>
> **NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS LICENSE NUMBER 2079588-DCA.**

(Collection Ltr.)   The reverse side of the Collection Letter includes additional legal notices advising the consumer about credit reporting and his or her rights under the FDCPA.  (*Id.*)

## II.  Procedural History

Plaintiff commenced this action on July 23, 2019.  (*See* ECF No. 1, Complaint ("Compl.").)   On August 28, 2019, Defendant answered the Complaint.  (ECF No. 8, Answer.)   Magistrate Judge Vera M. Scanlon held several conferences with the parties and discovery was closed on July 31, 2020.  (ECF No. 22, Defendant's Letter Confirming Completion of Discovery.)   On July 29, 2021, the parties filed their cross-motions for summary judgment and supporting submissions.  (*See* ECF Nos. 30, Defendant's Notice of Motion for Summary Judgment; 30-1 Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Mem."); 31, Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."); 33, Defendant's Reply in Support of its Motion for Summary Judgment ("Def. Reply"); 34, Plaintiff's Notice of Motion for Summary Judgment; 34-1, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem."); 35, Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."); 36, Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply").)   On October 4, 2021, Defendant filed a Notice of Supplemental Authority and submitted the Memorandum and Order in *Jones v. Mandarich Law Group*,

LLP, 19-cv-6264(RRM), dated September 21, 2021.   (ECF Nos. 37,
Defendant's Notice of Supplemental Authority; 37-1, Memorandum and
Order in *Jones.*)

## LEGAL STANDARD

Summary judgment shall be granted to a movant who
demonstrates "that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes
when it 'might affect the outcome of the suit under the governing
law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98,
104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986)).  No genuine issue of material fact exists
"unless there is sufficient evidence favoring the nonmoving party
for a jury to return a verdict for that party." *Anderson*, 477
U.S. at 249.  "If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted." *Id.* at
249-50 (internal citations omitted).

When bringing a motion for summary judgment, the movant
carries the burden of demonstrating the absence of any disputed
issues of material fact and entitlement to judgment as a matter of
law.  *Rojas*, 660 F.3d at 104.  In deciding a summary judgment
motion, the court must resolve all ambiguities and draw all
reasonable inferences against the moving party. *Flanigan v. Gen.
Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The standard is the same when cross motions for summary judgment are made. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *Estrada v. St. Francis Hosp.*, No. 13-cv-1243(JS), 2015 WL 6965202, at *8 (E.D.N.Y. Nov. 10, 2015).

## DISCUSSION

Plaintiff brought this action pursuant to the FDCPA and both parties have cross-moved for summary judgment on all of Plaintiff's claims. "A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559-60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). The parties do not dispute

9

that Plaintiff has satisfied the first two elements of her FDCPA claims: (1) that Plaintiff is a consumer who allegedly owes a debt; and (2) that Mandarich is a debt collector under the FDCPA.  (*See* Def. Resp. ¶¶ 1, 3-5; Answer, ¶¶ 6, 9.)  *See* 15 U.S.C. § 1692a(3) (A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt"); § 1692a(6) (A "debt collector" is a person "who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts").  Because it is undisputed that Plaintiff is a consumer and that Mandarich is a debt collector, the only remaining question is whether Mandarich engaged in any act or omission in violation of the FDCPA.

Plaintiff challenges the Collection Letter on the following grounds in the Complaint: Count One alleges that the letter, which was printed on a law firm letterhead and failed to advise the consumer that the placement of her account to a law firm does not override her validation rights, overshadowed and was inconsistent with the validation notice, in violation of section 1692g(b), and was deceptive, in violation of section 1692e(10), (Compl. ¶¶ 35-71); and Count Two alleges that the letter falsely implied that it is a communication from an attorney, in violation

10

of section 1692e(3), because no attorney was meaningfully involved in the collection of her debt.[5]  (*Id.* ¶¶ 72-85.)

Section 1692(e) states, in relevant part, that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692g(e).  The subsections Plaintiff alleges that Mandarich violated in Counts One and Two are:

- 1692e(3): The false representation or implication that any individual is an attorney or that any communication is from an attorney.

- 1692e(10): The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id.*

Plaintiff does not dispute that the Collection Letter contained all the information that it was statutorily required to provide under section 1692g(a).  Pursuant to section 1692g(a), a collection letter must state:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a

---

[5]   In addition to Count One, Plaintiff brought another "overshadowing" claim (Count Three), alleging that the collection letter's format overshadowed the validation notice, in violation of section 1692g(b).  (Compl. ¶¶ 86-138.)  In response to Defendant's motion for summary judgment, however, Plaintiff voluntarily withdrew Count Three, conceding that "[g]iven the recent developments in case law on this topic," Count Three is not viable on the facts present here.  (Pl. Opp. at 2.)  Accordingly, the Court grants Defendant's motion for summary judgment on Count Three and dismisses the claim with prejudice.

> statement that if the consumer notifies the
> debt collector in writing within the thirty-
> day period that the debt, or any portion
> thereof, is disputed, the debt collector will
> obtain verification of the debt or a copy of
> a judgment against the consumer and a copy of
> such verification or judgment will be mailed
> to the consumer by the debt collector; and (5)
> a statement that, upon the consumer's written
> request within the thirty-day period, the debt
> collector will provide the consumer with the
> name and address of the original creditor, if
> different from the current creditor.

15 U.S.C. § 1692g(a). In Count One, Plaintiff argues that Mandarich nevertheless violated section 1692g(b) of the FDCPA by "provid[ing] this information but then mak[ing] other 'communications' that 'overshadow' parts of the disclosure — namely, the so-called 'validation notice' required by subsections (3) through (5), which informs consumers that they have a right to verify and dispute the debt and to receive information about the original creditor." *Taylor v. Am. Coradius Int'l, LLC*, No. 19-cv-4890(EK), 2020 WL 4504657, at *1 (E.D.N.Y. Aug. 5, 2020). Section 1692g(b) provides as follows:

> If the consumer notifies the debt collector in
> writing within the thirty-day period described
> in subsection (a) that the debt, or any
> portion thereof, is disputed, or that the
> consumer requests the name and address of the
> original creditor, the debt collector shall
> cease collection of the debt, or any disputed
> portion thereof, until the debt collector
> obtains verification of the debt or a copy of
> a judgment, or the name and address of the
> original creditor, and a copy of such
> verification or judgment, or name and address
> of the original creditor, is mailed to the

12

> consumer by the debt collector. Collection
> activities and communications that do not
> otherwise violate this subchapter may continue
> during the 30-day period referred to in
> subsection (a) unless the consumer has
> notified the debt collector in writing that
> the debt, or any portion of the debt, is
> disputed or that the consumer requests the
> name and address of the original creditor. Any
> collection activities and communication
> during the 30-day period may not overshadow or
> be inconsistent with the disclosure of the
> consumer's right to dispute the debt or
> request the name and address of the original
> creditor.

15 U.S.C. § 1692g(b).

In determining whether a communication violates the FDCPA, courts analyze the communication using a "least sophisticated consumer" standard. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). Under this standard, "a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018) (internal quotation marks and citation omitted). The standard, however, will not render debt collectors liable for "bizarre or idiosyncratic interpretations of debt collection letters," *Greco*, 412 F.3d at 363 (internal quotation marks and citation omitted), or "unreasonable misinterpretations of collection notices," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

13

I.     **False Implication of Attorney Involvement (Count Two)**[6]

Plaintiff alleges in Count Two of her complaint that Mandarich violated section 1692e(3) because the Collection Letter "falsely impl[ied] that [it] is a communication from an attorney acting as an attorney," (Compl. ¶ 85), "mislead[ing] consumers into believing that there is meaningful attorney involvement in the collection of the debt," (*Id.* ¶ 81), when "[n]o attorney employed by [Mandarich] had any meaningful involvement in the day-to-day collection of Plaintiff's alleged debt," and the Collection Letter "contain[ed] no disclaimer concerning the lack of attorney involvement in the collection of Plaintiff's alleged debt." (*Id.* ¶¶ 77, 80.)

Plaintiff argues in her motion papers that there was no meaningful attorney involvement in the collection of her debt because the overwhelming majority, thirty-one out of thirty-nine, of the tasks appearing on the Debtor History Report, (ECF No. 26-5, Exhibit 4 to the Cader Decl.),[7] performed with respect to the Felberbaum Account were either fully automated or performed by non-attorneys. (Pl. Mem. at 5, 10.) Of the eight tasks that were completed by attorneys, Plaintiff argues, the six tasks completed

_____

[6]    The Court discusses Counts One and Two in reverse order, as its decision on Count Two, whether there was meaningful attorney involvement, affects its analysis on Count One, whether Mandarich's use of the firm letterhead required that it include a disclaimer regarding the lack of attorney involvement in the collection of Plaintiff's debt.

[7]    The Debtor History Report is a list memorializing the activities taken related to Plaintiff's account. (Exhibit 4 to the Cader Decl.)

by Chris Mandarich were ministerial and thus required no professional judgment, and the two tasks that were completed by Salyer were performed in less than one minute. (*Id.*)

Plaintiff also contends that notwithstanding Salyer's statement that he spent "the appropriate amount of time" in reviewing Plaintiff's file, (*see* Exhibit A to Def. 56.1 ("Salyer Aff."), Mandarich cannot show how much time was actually spent, as Salyer did not keep contemporaneous time records, and the JST Collection Platform[8] does not have in place any minimum time requirements for completing tasks, allowing any Mandarich attorney to "simply 'check off the boxes' without performing any review prior to a letter being generated." (Pl. Opp. at 4.)

Additionally, Plaintiff argues that, in any event, Salyer's review of the documents he identifies as having reviewed— "the bulk bill of sale and account statements from the original creditor"—would not be sufficiently meaningful, citing to *Miller v. Wolpoff & Abramson*, L.L.P., 321 F.3d 292 (2d Cir. 2003) (referred to herein as "*Miller I*"), as support. (Pl. Mem. 10—12.) And in a similar vein, Plaintiff asserts that Mandarich was acting

---

[8]     JST Collection Platform is the collection software used by Mandarich that takes the form of a checklist of questions that Mandarich attorneys must review and complete prior to any debtor account being approved for placement with the firm.  (Pl. Resp. at 8; Exhibit 2 to Cader Decl. ("Whitlatch Dep. Tr."), at 37 ("Q: And that's through this JST platform?  A: Yes.  Q: And you said, as far as you know, there is no governor on that software as to how quickly -- is it a check box?  A: It is a checklist, like commonsense of the word, there is [sic] questions and yes or no boxes next to the question.  Q: Okay. So it's either a radio box or a checkbox?  A: Yes.").)

solely in its capacity as a collection agent when it sent the Collection Letter because the Debtor History Report and the Salyer Affidavit show that Salyer formed no opinion other than that an initial collection letter should be sent. (Pl. Opp. at 5, 13.)

Finally, Plaintiff argues that there was no meaningful attorney involvement because the Collection Letter was computer-generated, printed, and mailed by a non-attorney in Mandarich's Chicago office, even though Salyer was in the Ohio office, and was not signed by nor referenced any attorney, including Salyer. (Pl. Mem. at 6, 12–13.)

Defendant cross-moves for summary judgment on Count Two, contending that the undisputed facts in the record do not support Plaintiff's claim that there was no meaningful attorney involvement in the collection of her debt because Salyer reviewed Plaintiff's entire file and made a professional, reasoned determination as attorney that a collection letter should be sent. (Def. Mem. at 2.) In support, Defendant submitted the Salyer and Whitlatch Affidavits, which are not disputed with admissible evidence. (*See* Salyer Aff.; Whitlatch Aff.)

Section 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). "[S]ome degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA."

16

*Miller I*, 321 F.3d at 301 (citing *Clomon*, 988 F.2d at 1321).  "[A] letter sent on law firm letterhead, *standing alone*, does represent a level of attorney involvement to the debtor receiving the letter." *Greco*, 412 F.3d at 364.

Here, the Collection Letter is printed on a law firm letterhead and contains no disclaimer regarding the lack of attorney involvement in the collection of Plaintiff's debt. (*See* Collection Ltr.)   Thus, under Second Circuit precedent, the Collection Letter, by virtue of its Mandarich letterhead, represents "a level of attorney involvement to the debtor receiving the letter." *Greco*, 412 F.3d at 364.  Accordingly, the open question is whether an attorney was meaningfully involved in the collection process. *See Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-cv-7539(MKB), 2016 WL 1274541, at *16 (E.D.N.Y. Mar. 31, 2016) (A collection letter on a law firm letterhead "may violate section 1692e(3) where 'the attorney or firm had not, in fact, engaged in [the] implied level of involvement.'") (citation omitted).  Based on the undisputed facts, the Court finds that an attorney was meaningfully and sufficiently involved in the collection process to warrant summary judgment in Mandarich's favor on Count Two.

In *Miller I*, the Second Circuit declined to set forth a bright-line test to determine whether a sufficiently meaningful attorney review has occurred in a given case, *see* 321 F.3d at 304;

17

instead, the court noted that the analysis turns on, among other things, "precisely what information the affiants reviewed, how much time was spent reviewing plaintiff's file, and whether any legal judgment was involved with the decision to send the letters," *id.* at 307.

Courts in this Circuit have granted summary judgment when law firms have provided evidence that an attorney personally reviewed a debtor's file before a letter was sent. *See Mizrahi v. Network Recovery Servs., Inc.*, No. 98-cv-528(ERK), 1999 WL 33127737, at *4 (E.D.N.Y. Nov. 5, 1999) (holding that an attorney was meaningfully involved because she conducted initial reviews of the debtor files and then divided them amongst herself and two paralegals for further in-depth review before letters were sent); *Kapeluschnik v. Leschack & Grodensky, P.C.*, No. 96-cv-2399(ERK), 1999 WL 33973360, at *5 (E.D.N.Y. Aug. 26, 1999) (granting summary judgment because, *inter alia*, individual attorneys were assigned to "supervise the collection of information from creditors, and the sending of letters in each case" and the defendant "named a specific attorney who supervised and directed each plaintiff's case").

In the instant case, Mandarich has submitted the Salyer Affidavit, in which Salyer, a licensed attorney who was employed by Mandarich at times relevant to Plaintiff's claims, and personally reviewed and approved the Felberbaum Account for

18

collection, describes the specific tasks that he undertook prior to requesting that an initial collection letter be sent to Plaintiff. (Salyer Aff. at 4–5.) Specifically, Salyer reviewed all the documents in Plaintiff's file, including the Affidavit of Sale of Account by Original Creditor, the Bill of Sale and Assignment by the Original Creditor to Cavalry, and the redacted exhibit to the Bill of Sale and Assignment, which demonstrated that the Felberbaum Account was one of the accounts that Cavalry had purchased from the Original Creditor. (Salyer Aff. at 4; Group Exhibit A-3 to Def. 56.1.) Salyer also reviewed various statements of the Felberbaum Account from 2014 to 2018, when the account was ultimately charged off. (Salyer Aff. at 4; Group Exhibit A-4 to Def. 56.1.) The statements contained account information that matched the information appearing in the bill of sale documents, and demonstrated that Plaintiff made purchases, returns, and at least one payment on the Felberbaum Account. (Group Exhibit A-4 to Def. 56.1; Group Exhibit A-3 to Def. 56.1.)

Thus, based on Salyer's review of Plaintiff's account files, he concluded that Cavalry owned the Felberbaum Account, and Plaintiff incurred a debt on the Felberbaum Account the balance of which remained outstanding. (Salyer Aff. at 5–6.) Salyer also made the determination that there were no special circumstances associated with the Felberbaum Account, such as a bankruptcy filing, death of the consumer, fraud or identity theft, or

19

discrepancies in the account files. (*Id.*) And based on the foregoing, Salyer approved the Felberbaum Account for collection and caused the Collection Letter to be sent to Plaintiff.[9] (*Id.*)

Additionally, Mandarich submitted an affidavit by Whitlatch, who is a partner at Mandarich and was employed by Mandarich as an attorney at all relevant times described in the Complaint, stating that she has personal knowledge of "the policies and procedures that were in place as well as the firm's general practice, procedures and operations in the area of creditors' rights during [those times]." (Whitlatch Aff. at 1—3.) Whitlatch attests that Mandarich had then and still has in place a policy and procedure called the "Attorney Meaningful Involvement Procedure," pursuant to which an account cannot be approved for collection unless an attorney employed by Mandarich determines that there is sufficient evidence to support a debtor's obligation on a particular debt. (*Id.* at 3—5.)

---

[9]     Plaintiff asserts that Mandarich was acting solely in its capacity as a collection agent when it sent the Collection Letter because Salyer formed no opinion other than that an initial collection letter should be sent. (Pl. Opp. at 5, 13.) The Court disagrees. According to the Second Circuit in *Greco*, where no attorney from the law firm that sent the collection letter "personally reviewed the particular circumstances of [the consumer's] account," the law firm's involvement in the collection process is limited and the law firm's collection letter to the consumer therefore must include "a clear disclaimer explaining the limited extent of [its] involvement." 412 F.3d at 365. Here, because Salyer reviewed the particular circumstances of Plaintiff's debt in forming the opinion that the Collection Letter should be sent, Mandarich's involvement was not limited, it was not acting solely as a collection agent, and a disclaimer was not required to be included in the Collection Letter.

Plaintiff, on the other hand, relies on her own interpretation of the Debtor History Report to argue, without evidentiary support, that Salyer spent no more than a minute in reviewing Plaintiff's account. (Pl. Mem. at 5, 10.) It appears that Plaintiff makes this unsupported argument because the two tasks on the Debtor History Report that were completed by Salyer are both time-stamped "03/13/19 10:33a." (Exhibit 4 to the Cader Decl.) The Court finds Plaintiff's interpretation of the Debtor History Report to be inaccurate, unsupported, and insufficient to create a material factual dispute regarding the sworn deposition testimony of Whitlatch. Whitlatch gave the following testimony as to Salyer's two tasks on the Debtor History Report:

> Q:  Okay. Then the entry below [the first entry appearing on the page of the Debtor History Report bates stamped MLG_088,] on March 13, 2019 at 10:33 a.m., MSS, who is MSS?
> A:  That is Matt Salyer.
> Q:  Okay. And what is the first item entered there, Acct at 10:33 a.m.?
> A:  So that item and the item below it are added in conjunction with each other, so this means that he approved the placement, and like I said everything is action triggered, so him approving the placement added the action to let the computer know that the account was ready for demand.
> Q:  Okay. Do you know from looking at these entries how much time Mr. Salyer spent on these tasks?
> A:  No.

(Whitlatch Dep. Tr. at 79—80.) Thus, Whitlatch testified specifically that the two entries were "added in conjunction with

each other," so that the entry of the first task by Salyer triggered the second task to be entered, and neither indicates how much time Salyer spent on the Felberbaum Account prior to approving it for collection. The Salyer Affidavit states that although Salyer did not record the amount of time he spent reviewing Plaintiff's file, he enumerated the specific documents that he reviewed before developing his professional opinion that the initial communication with Plaintiff should be sent. (Salyer Aff. at 4–6.) Therefore, the Court finds that Plaintiff's reliance on the Debtor History Report fails to create a genuine dispute of material fact as to whether Salyer spent an appropriate amount of time exercising his professional judgment in reviewing the Felberbaum Account before Mandarich sent the Collection Letter to Plaintiff.

Plaintiff's remaining arguments are likewise meritless. Plaintiff's arguments that Mandarich cannot show the precise amount of time that Salyer spent on Plaintiff's file because he did not keep contemporaneous time records, and that an attorney, in theory, could simply check the boxes on the JST Collection Platform to generate a collection letter without performing any review, are not evidence. Thus, there is no genuine factual dispute regarding the statements in the Salyer Affidavit that, as an attorney at Mandarich, he spent the time that he believed was appropriate and necessary to review the Felberbaum Account

documents.[10]  *See Parker v. Mandarich Law Group, LLP*, No. 19-cv-6313(KAM), 2021 WL 2351177, at *15—*17 (E.D.N.Y. June 9, 2021) (holding, in granting defendant's motion for summary judgment on plaintiff's lack of meaningful attorney involvement claim, that notwithstanding plaintiff's argument that defendant's attorney did not keep contemporaneous time records and "may have 'checked all the boxes [on the JST Collection Platform]' when reviewing the Collection Letter," plaintiff failed to the create a genuine issue of material fact); *Jones v. Mandarich Law Group, LLP*, No. 19-cv-6264(RRM) (E.D.N.Y. Sept. 29, 2021) (same).

In addition, the Court finds that Plaintiff's reliance on *Miller I* is misplaced.  In *Miller I*, the Second Circuit held that an attorney's review of plaintiff's "file,"[11] which only contained summaries of (1) basic identifying information regarding plaintiff's debt (e.g., plaintiff's name, the account number, and the date of the last charge on the account) and (2) the original creditor's customer service notes, without the underlying debt documentation, was not sufficiently meaningful.  321 F.3d at 304,

---

[10]    The Court also notes that Plaintiff had the opportunity to depose attorney Salyer on how much time he had spent reviewing the Felberbaum Account. Plaintiff, having chosen not to do so, cannot now attempt to manufacture a factual dispute by proffering only speculative arguments, without proffering supporting evidence.  *See DeLuca v. Sirius XM Radio*, Inc., No. 12-cv-8239(CM), 2017 WL 3671038, at *1 (S.D.N.Y. Aug. 7, 2017) ("On a motion for summary judgment, 'A non-moving party cannot create a factual dispute merely by denying a movant party's factual statement; rather, the non-moving party must identify controverting evidence for the court.'") (citation omitted).

[11]    *See Miller I*, 321 F.3d at 304 n.2 ("[WA] partner . . . stated that he reviewed plaintiff's 'file' after it was referred by [the original creditor] before sending the initial letter.") (quotation marks in the original).

304 n.3. *See also Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 97 (2009) (referred to herein as "*Miller III*") ("Reference to . . . *Miller I* . . . indicates the need to review underlying debtor information such as the underlying contract and/or client file.").

Notably, in *Miller I*, because the district court had granted defendants Wolpoff & Abramson, L.L.P. ("WA") and Upton, Cohen & Slamowitz ("UCS")[12] summary judgment before any discovery was conducted, the Second Circuit, in deciding whether there was meaningful attorney involvement, was limited to considering the affidavits filed by the WA and UCS attorneys in support of their motion for summary judgment and what the attorneys attested therein as having reviewed. *See id.* at 305–06. According to the affidavit filed by the WA attorney, he reviewed basic identifying information regarding plaintiff's debt that was conveyed to him by the original creditor, and a summary of the original creditor's customer service notes, without the underlying debt documentation. Indeed, the Second Circuit noted that "[t]he affidavit does not . . . state whether the file contained the payment history, if any, on the account or a complete record of [the original creditor's] customer

---

[12] The original creditor had initially forwarded plaintiff's account to WA for collection assistance. WA made the determination that a lawsuit against plaintiff was warranted. *Miller v. Wolpoff & Abramson, L.L.P.*, 471 F. Supp. 2d 243, 246 (E.D.N.Y. 2007) (referred to herein as "*Miller II*"). Because plaintiff was a New York resident, WA referred the matter to its New York local counsel USC via a third-party information exchange service called the National Attorney Network ("NAN"). *Miller III*, 687 F. Supp. 2d at 90 (2009).

service notes." *Id.* at 304 n.2.  The affidavit filed by the UCS attorney stated that he reviewed: "[plaintiff's] full name, social security number, current address, telephone number, the . . . account number, the amount of the debt, and a notation that [plaintiff] was an attorney." *Id.* at 305—06.

Based on its review of the attorney affidavits, the Second Circuit held that summary judgment was premature, "[g]iven the very limited nature of the material [defendants' attorneys] claim to have reviewed," likening the review undertaken to "merely being told by a client that a debt is overdue . . . ." *Id.* at 304, 307.  The Second Circuit also cited to *Nielsen v. Dickerson*, 307 F.3d 623, 638 (7th Cir. 2002), in which the Seventh Circuit held that there was no meaningful attorney involvement where the attorney "knew nothing about the debtor and her potential liability beyond what [original creditor] had conveyed to him; and [the creditor] provided [the attorney] only the bare information that [he] required in order to complete the blanks in his form letter." *Miller I*, 321 F.3d at 305.

The Second Circuit remanded the case for discovery on the sole issue of whether WA and UCS had conducted meaningful attorney review of plaintiff's file, and the parties engaged in discovery.  *Miller III*, 687 F. Supp. 2d at 88.  Thereafter, WA entered into a consent judgment, which disposed of plaintiff's

claim against WA.  *Id.*  Thus, the only remaining claim in the case was whether UCS had conducted meaningful attorney review of plaintiff's account.  *Id.*  UCS renewed its motion for summary judgment, which was denied.  *Miller II*, 471 F. Supp. 2d at 257. The court in *Miller III*, after conducting a bench trial, made the factual findings that when plaintiff's account was referred to UCS, WA transmitted some, but not all, of plaintiff's account file to UCS through NAN, due to the constraints placed by NAN's software.  *See* 687 F. Supp. 2d at 92 ("[T]he information actually conveyed to UCS consisted principally of [plaintiff's] basic identifying information . . . all of which corresponded to the NAN software's preset data fields.")  The court also found that the file in UCS's possession did not include documents such as "[plaintiff's] credit card application, monthly billing statements, and his correspondence with both [the original creditor] and [WA]."  *Id.* at 94.  The court concluded, "given the nature of [the UCS attorney's] testimony coupled with the undisputed, credible evidence establishing [the attorney's] failure to personally review any of the relevant underlying data, the Court finds that UCS did not conduct a sufficient attorney review for FDCPA purposes."  *Id.* at 99.

Here, in contrast, Mandarich has submitted a sworn affidavit in which Salyer, the attorney who approved the Felberbaum Account for collection, details all the documents that were in

Plaintiff's file that he personally reviewed, including the Affidavit of Sale of Account by Original Creditor, the Bill of Sale and Assignment by the Original Creditor to Cavalry, the redacted exhibit to the Bill of Sale and Assignment, and the Account Statements. (Salyer Aff. at 4.) Furthermore, Salyer attests that he made the determination, based on his personal review of the underlying debt documents associated with the Felberbaum Account, that a valid and outstanding debt existed that was attributable to Plaintiff and owned by its client, Cavalry. (Salyer Aff. at 5–6.) Therefore, the Court concludes that the *Miller* cases are distinguishable and do not weigh in favor of a finding that Salyer's review of the Felberbaum Account was not sufficiently meaningful.

Finally, Salyer exercised adequate review, professional judgment, control, and supervision over the sending of the Collection Letter. In accordance with Mandarich's Attorney Meaningful Involvement Procedure, the Collection Letter would not have been sent absent review and approval from Salyer. Consequently, the Court finds that computer-generation by Mandarich of its collection letters did not violate the FDCPA. *See Kapeluschnik*, 1999 WL 33973360, at *5 (E.D.N.Y. Aug. 26, 1999) (noting that the Second Circuit in *Clomon* did not flatly ban mass-mailing of collection letters ).

Based on this record, the Court concludes that there is no genuine dispute of material fact regarding attorney Salyer's meaningful involvement in reviewing the Felberbaum Account, and, accordingly, grants Defendant's motion for summary judgment on Count Two.

## II.  Overshadowing of the Validation Notice (Count One)

As to Count One, Plaintiff alleges that Mandarich violated sections 1692g(b) and 1693e of the FDCPA because its use of the firm letterhead, without any disclaimer that the placement of the debt to a law firm does not override the consumer's validation rights, overshadowed or was inconsistent with the validation notice, and misled the consumer to believe that disputing the alleged debt or seeking validation would be futile and she could still be subject to legal action. (Compl. ¶¶ 35–71.)

In addition, Plaintiff argues in her motion papers that the Collection Letter, which was printed on Mandarich's letterhead, failed to effectively communicate the consumer's validation rights because it did not include an express disclaimer that the firm is acting solely in its capacity as a collection agent. (Pl. Opp. at 1.)  Plaintiff also argues, in the alternative, that even if Salyer's review of Plaintiff's file was meaningful, Mandarich nevertheless was acting solely in its capacity as a

collection agent in sending the letter such that a disclaimer was likewise required.[13] (Pl. Opp. at 1–2.)

A communication from a debt collector may be a threat if the least sophisticated consumer "would interpret th[e] language to mean that legal action was authorized, likely, and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (finding that a letter "implied that the commencement of legal proceedings was imminent" by falsely stating that a debt collection agency was authorized to commence legal proceedings). Here, the Collection Letter makes no reference to any consequence of failing to pay the outstanding debt. (Collection Ltr.) The letterhead includes the heading "Mandarich Law Group, LLP, Attorneys at Law" with the firm's contact information and lists the states in which Mandarich employs attorneys licensed to practice. (*Id.*) Contrary to Plaintiff's assertion, the mere fact that a Collection Letter is printed on law firm letterhead does not, by itself, imply an immediate threat of legal action overshadowing a validation notice in violation of the FDCPA. *See Hochhauser v. Grossman & Karaszewski, PLLC*, No. 19-cv-2468(ARR), 2020 WL 2042390, at *5 (E.D.N.Y. Apr. 28, 2020) ("A debt collection letter on a law firm's letterhead does not inherently overshadow the validation notice."); *see also Nichols*

---

[13]   The Court respectfully rejects this argument for the same reasons set forth in footnote 5.

*v. Frederick J. Hanna & Assocs., PC*, 760 F. Supp. 2d 275, 279 (N.D.N.Y. 2011) ("Several courts have held that a letter written on a law firm's letterhead is insufficient, on its own, to imply that litigation is imminent." (collecting cases)).  The Collection Letter here does not refer to any consequence of failing to pay the outstanding debt, does not set any deadline for Plaintiff to respond, and expressly notes that Mandarich would suspend its efforts to collect the debt if Plaintiff sought to exercise her rights to validate the debt. (*See* Collection Ltr.)  The validation notice clearly advised Plaintiff of her rights, and "the fact that the debt collector is a law firm does not contradict the validation notice." *Hochhauser*, 2020 WL 2042390, at *5.

As to Plaintiff's argument that the Collection Letter should have included a disclaimer that Mandarich is acting solely in its capacity as a collection agent, the Court finds that because there was meaningful attorney involvement in the collection of Plaintiff's debt no such disclaimer was required.

For these reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's claims in Count One.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety. Plaintiff's motion for summary judgment is denied. The Clerk of Court is respectfully requested to enter judgment for Defendant and close this case.

SO ORDERED.


_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York


Dated: Brooklyn, New York
       January 27, 2022